E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BRUCE K. RIORDAN (Cal. Bar No. 127230)
KELLYE NG (Cal. Bar No. 313051)
Assistant United States Attorneys
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0480/8408
    Facsimile: (213) 894-3713
    E-mail:  Bruce.Riordan@usdoj.gov
              Kellye.Ng@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>PHILIP ALAN DRECHSLER,<br><br>        Defendant. | No. CR 23-216-RGK<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT PHILIP ALAN DRECHSLER'S APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE/DETENTION (18 U.S.C. § 3142); DECLARATION OF KELLYE NG AND EXHIBITS<br><br>**(REDACTED)** |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Bruce Riordan and Kellye Ng, hereby files the Government's Opposition to Defendant PHILIP ALAN DRECHSLER's Application for Review/Reconsideration of an Order Setting Conditions of Detention (the "Opposition").

//

This Opposition is based upon the attached memorandum of points and authorities, the declaration of AUSA Kellye Ng, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 5, 2023       Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

      /s/
KELLYE NG
BRUCE K. RIORDAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On June 6, 2023, this Court ruled that no conditions or combination of conditions would reasonably assure defendant PHILIP ALAN DRECHSLER's ("defendant") appearance as required, or the safety of any person or the community. (Dkt. 22 at 2.) Nothing in defendant's Application for Reconsideration of the Court's Order Setting Detention changes the propriety of the ruling. (Dkt. 27.)

Defendant, a 61-year-old former journalist, distributed child pornography in a secret Telegram chatroom called "The Playground Lives." On April 6, 2023, law enforcement executed a search at defendant's home. (Dkt. 1 ¶ 22.) About less than two weeks after the search--and knowing that he was under investigation for child exploitation charges--defendant grabbed his firearms, drove from Los Angeles County to Ohio, and expressed suicidal ideations. (Id. ¶ 25.) Indeed, defendant's subsequently obtained journal entries reveal how close he was to committing suicide. (See Declaration of Kellye Ng, ¶ 2, Ex. A, at USAO_000272-73, 275-77.)

Because of the defendant's danger to himself and to the community, the government filed an after-hours complaint on April 18, 2023. (Dkt. 1.) After a tense but brief standoff during which defendant was armed with a loaded gun, defendant ultimately surrendered to law enforcement at his Ohio hotel. (Ng Decl. ¶ 3, Ex. B at 1.) Defendant conveyed to the arresting officers that he had contemplated three options: commit suicide, run, or surrender. (Id.)

The Court should deny defendant's application because he fails to rebut the presumption of detention under 18 U.S.C. § 3142(e)(3), especially where defendant is presently charged under 18 U.S.C.

§ 2252A(a)(2)(A).  Moreover, there are no conditions or combination of conditions that will reasonably assure either defendant's appearance or the community's safety.  No new information refutes these findings, particularly considering: (1) the nature of the charges; and (2) the prospect that defendant will serve a substantial term of imprisonment upon conviction -- specifically, a five-year mandatory minimum sentence for his distribution of child pornography charges.  See 18 U.S.C. § 2252A(a)(2)(A), (b)(1).

**II.  PROCEDURAL HISTORY**

On April 19, 2023, defendant made his initial appearance on the complaint in the Southern District of Ohio and the Court ordered him detained.  On May 30, 2023, defendant made his initial appearance in the Central District of California.  (Dkt. 13.)  At the continued detention hearing on June 6, 2023, this Court ordered that defendant be detained pending trial.  (Dkt. 22.)

In its Order, the Court found no conditions or combination of conditions that would reasonably assure the safety of the community and the appearance of the defendant as required.  (Id. at 2.)  Specifically, this Court found that detention was warranted by: (1) the lack of suitable residence and oversight (suitable staffing); (2) mental health concerns; (3) defendant's possession of a loaded firearm at the time of his arrest; (4) defendant's statements regarding his suicidal ideations, access to firearms, and mental health concerns; and (5) the allegations in the present charging document.  (See generally Dkt. 22.)

On September 1, 2023, defendant applied for reconsideration of the order for pretrial detention.  (Dkt. 27.)

**III. DEFENDANT SHOULD REMAIN DETAINED PENDING TRIAL**

Defendant's application for reconsideration of pretrial detention should be denied because he fails to overcome the presumption of detention applicable to his distribution of child pornography charges; he remains a danger to the community; he remains a risk of nonappearance; and -- against this record –- the relinquishment of his weapons and sureties fail to warrant reconsideration of the Court's well-considered detention order.

    **A.    Legal Standards for Pretrial Detention, Including the Statutory Presumption in Favor of Detention**

A defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is thus appropriate where a defendant is either a danger to the community or a flight risk. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). In the typical case, "the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing Motamedi, 767 F.2d at 1406-07). But where, as here, there is probable cause to believe that defendant committed an offense under 18 U.S.C. § 2252(A)(a)(2)(A), it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E).

Categorical grants or denials of bail, untethered from an individualized determination, are impermissible. United States v.

3

<u>Diaz-Hernandez</u>, 943 F.3d 1196, 1199 (9th Cir. 2019).  That is because "the Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."  <u>Id.</u>  Those factors are:

>   (1)   the nature and circumstances of the offense charged;
>
>   (2)   the weight of the evidence against the defendant;
>
>   (3)   the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history; and
>
>   (4)   the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

<u>United States v. Winsor</u>, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam) (citation omitted).  Consideration of non-statutory factors is disfavored.  <u>Diaz-Hernandez</u>, 943 F.3d at 1199.

Under 18 U.S.C. § 3142(f)(2), a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

### 1. Defendant Is Charged with Serious Crimes, Including Distribution of Child Pornography

Defendant distributed child pornography in a private Telegram chatroom called, "The Playground Lives."  The seriousness of defendant's offenses is underscored by the penalties Congress has imposed for these crimes: a mandatory minimum of five years' incarceration for distribution of child pornography.  The penalties reflect the seriousness of the crimes and the danger defendant poses to the community, as well as provide an incentive for defendant to flee if released pending trial.

2. <u>The Weight of the Evidence is Overwhelming</u>

Defendant distributed the child sex abuse material ("CSAM") as described in detail in the complaint and indictment. (Dkt. 1 ¶ 19; Dkt. 7.) Indeed, defendant wrote about his conduct in his own journal entries. (<u>Id.</u> ¶ 2, Ex. A at USAO_000274 ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ <u>id.</u> at 271 ▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.) A preliminary review of defendant's digital device during the search showed apparent CSAM in his "recently deleted" photo album. (Dkt. 1 ¶ 22.)

Moreover, subpoena records show that defendant's Telegram account listed a Google Voice number that traced back to defendant. (<u>Id.</u> ¶ 14.)

3. <u>Defendant's Characteristics Indicate that He is a Danger to the Community</u>

While the defendant has no prior convictions, his own journal entries show how close he was to committing harm to himself. Defendant's agreement to give up his firearms and ammunition does not resolve the issue of the danger he poses to himself or to the community. Nowhere in defendant's filing shows that defendant cannot re-access weapons or other items that may be used to commit harm to himself or others. (<u>See</u> <u>generally</u> Dkt. 27.) Defendant's ability to lead a double life makes him unconducive to effective supervision, if released. M.D. is terrified that defendant will show up at her door if released. (Ng Decl. ¶ 4, Ex. C at 1.)

5

Courts frequently detain defendants accused of child exploitation crimes, even when the defendant has little or no criminal history. See United States v. Abad, 350 F.3d 793, 798-99 (8th Cir. 2003) (noting even though the defendant had no prior criminal history, "the nature of the crime charged – sexual activity with a minor" – weighs heavily against release); United States v. Mercedes, 254 F.3d 433, 438 (2d Cir. 2001) (reversing the decision of the district court to release the defendant even without a prior criminal record where crime victim was a minor); United States v. Gaw, 2013 WL 5979625, *3 (N.D. Cal. Nov. 8, 2013) (detaining employed defendant with no criminal history because the evidence showed that he received child pornography and used social media site to induce minor to create child pornography).

For these reasons, there are no conditions of release that would adequately protect the community here.

### 4. Defendant's Proposed Bond Does Not Mitigate the Risk of Danger

In his application, defendant proposes a $15,000 appearance bond signed by his cousin, Jon Werner; a $20,000 cash deposit[1]; home incarceration; no Internet-enabled devices; no firearms; among other conditions. (Dkt. 27.)

But even significant bond resources do nothing to eliminate the risk of danger to the community. See Rep. No. 225, 98th Congress, 1st Sess. 1983, 1984 U.S.C.A.N. 3182, 3198-99 (n.60) (Congress

---

[1] M.D., defendant's estranged spouse, has indicated that defendant has no liquid cash and that he should not be moving assets from their savings account while their divorce proceedings are pending. (Ng Decl. ¶ 4, Ex. C at 1.) She also noted that if defendant were to access his retirement, he would be required to use the Internet. (See id.)

6

finding that "a defendant who is a danger to the community remains dangerous even if he has posted a substantial money bond").

Similarly, defendant's proposed monitoring conditions would not prevent him from accessing other dangerous means to commit suicide or accessing the Internet via devices belonging to other persons. In light of the "myriad Internet-capable devices available, including those that work with data plans rather than WiFi access, render[] policing [defendant's] Internet use almost impossible." Cornish, 449 F. Supp. 3d at 686-87 (finding that bond conditions could not sufficiently mitigate the danger defendant posed to the community, and children in particular, if he was released); see also United States v. Ritterhoff, 11-CR-1955-WJ, 2011 WL 13289664, *3-4 (D. N.M. Aug. 8, 2011) (reversing the magistrate court's order setting conditions of release and remanding defendant to custody, reasoning that no conditions could reasonably assure defendant's appearance and safety of the community where defendant attempted to entice minors on the Internet because the ubiquity of Internet access made it virtually impossible to prevent defendant from using it); United States v. Reiner, 468 F. Supp. 2d 393, 398-99 (E.D.N.Y. 2006) ("In this day and age, with devices such as cellphones, Blackberries, and laptops, there are no conditions which can reasonably assure the safety of the community under the particular circumstances of this case if the defendant is released on bail."). Punitive felony criminal statutes were not enough to deter defendant from participating in distribution of child pornography in private chatrooms and from counseling other chatroom members to evade law enforcement detection; there is little reason to think that a (largely unenforceable) bond condition will be more effective.

7

In sum, as to danger to the community, defendant has not identified a change in circumstances that would warrant a change in the Court's previous ruling.

### 5. Defendant Poses a Risk of Nonappearance

The Initial Pretrial Services Report also supports the Court's finding that he poses a risk of nonappearance. After law enforcement conducted a search at his home and seized his digital devices,[2] defendant expressed suicidal ideations and instructed his spouse to donate his belongings. (Dkt. 1 ¶ 25.) Therefore, days after the search—when defendant knew that he was under investigation for distributing child pornography—he grabbed his firearms and ammunition, and drove from Los Angeles County to Ohio to visit his parents' gravesite one last time. (Id. ¶ 25.) Defendant's journal entries speak for themselves. (See Ng Decl. ¶ 2, Ex. A, at USAO_000272-73, 275 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████")). Defendant poses a continued risk of nonappearance if released into the community.

Additionally, in defendant's own Telegram communications, defendant instructed other chatroom members how to evade law enforcement detection (Dkt. 1 ¶ 19) and wrote in his journal about needing to delete his Snap, Instagram, and Twitter accounts (Ng Decl. ¶ 2, Ex. A, at USAO_000279). Defendant cannot now be entrusted to comply with the Court's and Pretrial Service's orders.

---

[2] As noted in the complaint, a preliminary review of defendant's device showed what appeared to be CSAM in the "recently deleted" photo album folder.

8

Defendant also faces a statutorily required, mandatory minimum sentence of five years' imprisonment and a maximum penalty of twenty years' imprisonment.  The possibility of a lengthy prison sentence may motivate defendant to flee.  See United States v. Townsend, 897 F.2d 989, 994-95 (9th Cir. 1990) (holding that the district court properly considered "penalties possible under the present indictment" as providing an "incentive to consider flight," and noting that electronic monitoring cannot assure prevention of flight).

Because of defendant's real potential for violent self-harm, his instructions to other Telegram chat users on how to evade law enforcement detection, and the significant prison length he faces, defendant's risk of nonappearance cannot be mitigated.

**IV.   CONCLUSION**

Nothing in defendant's application overcomes the statutory presumption in favor of detention, and nothing justifies reconsideration of the Court's prior, well-reasoned findings and decision.  For these reasons, the government respectfully requests that this Court deny defendant's application for reconsideration of its prior detention order.