CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
KATE L. MORRIS (Bar No. 332159)
(E-Mail: Kate_Morris@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
PHILIP DRECHSLER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23-CR-00216-RGK |
| Plaintiff, | **DEFENSE MEMORANDUM APPEALING DETENTION** |
| v. | |
| PHILIP DRECHSLER, | |
| Defendant. | |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Philip Drechsler is a 61-year-old man with no criminal history. He is the kind of person whom the Bail Reform Act ("BRA") recognizes should be released on appropriate conditions of bond. Although the Magistrate Judge ordered detention, he respectfully seeks this Court's de novo review.

Although this is a presumption case, the defense has rebutted that presumption with a robust bail package that includes: a $15,000 appearance bond by Mr. Drechsler's cousin, a $20,000 cash deposit by Mr. Drechsler within one week of his release, supervision by Pretrial Services, home incarceration at a local apartment hotel, travel restricted to this District, surrender of all travel documents, location monitoring with a GPS ankle bracelet, a prohibition against possessing firearms, a prohibition against possessing internet-enabled devices, and all conditions related to cases involving sex-offense allegations. This strict set of conditions rebuts the presumption and warrants Mr. Drechsler's release.

## II.    LEGAL STANDARDS

The Bail Reform Act ("BRA") authorizes pretrial detention "only in rare circumstances," and "doubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). As the Supreme Court has explained, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Consistent with this framework, detention is authorized only if the government proves: (i) by clear and convincing evidence, that no set of conditions will reasonably assure the safety of any other person or the community; and (ii) by a preponderance, that no set of conditions will reasonably assure the defendant's appearance. 18 U.S.C. § 3142; *see also Salerno*, 481 U.S. at 741, 750-52; *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *Motamedi*, 767 F.2d at 1405.

1

In cases involving certain allegations, such as the offense charged here, the BRA creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(3). Although this presumption places the burden of production onto the defense, the burden of persuasion remains on the government. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

Very little is required for the defense to rebut the presumption. *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) ("[T]he burden placed on the defendant to rebut the presumption is small."); *Dominguez*, 783 F.3d at 707 ("The burden of production is not a heavy one to meet[.]"). A defendant simply needs to produce "some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707; *see also Jessup*, 757 F.2d at 384. The presumption is rebutted by "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." Once the presumption is rebutted, "it remains in the case as an evidentiary finding . . . to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.*

A district court reviews de novo a magistrate judge's decision denying bail. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

### III.   ARGUMENT

**A.   Mr. Drechsler Should Be Released Under the Strict Set of Conditions Proposed By the Defense**

The defense is proposing release on an extremely strict set of conditions, which provide sufficient assurances that Mr. Drechsler will not flee or endanger the community pending his trial. Those conditions are:

- $15,000 appearance bond signed by Mr. Drechsler's cousin, J.W.;

- $20,000 cash deposit by Mr. Drechsler within a week of his release;
- Submit to Pretrial Services supervision;
- Surrender all passports and travel documents prior to release;
- Travel restricted to the Central District of California;
- Reside as approved by Pretrial Services and do not relocate without prior permission;
- No contact, directly or indirectly (including by electronic means), with any known victim or witness in the subject investigation or prosecution;
- Do not possess any firearms, ammunition, or other dangerous weapons, and submit to compliance searches;
- Do not use alcohol, and submit to alcohol testing;
- Participate in mental health treatment as directed by Pretrial Services;
- Participate in the Location Monitoring Program; specifically, home incarceration with a GPS ankle monitor;
- Possess and use only those digital devices, screen usernames, email accounts, social media accounts, messaging applications and cloud storage accounts, as well as any passwords or passcodes for all such digital devices and accounts, that are disclosed to Pretrial Services, and submit to compliance searches;
- All digital devices subject to monitoring;
- Do not associate with or have verbal, written, telephonic, electronic, or any other communication with any person under 18;
- Do not enter or loiter within 100 feet of schoolyards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, amusement and theme parks, or other places frequented by persons under 18;
- Do not be employed by, affiliated with, own, control, or otherwise participate directly or indirectly in the operation of any daycare facility, school, or other organization dealing with the care, custody or control of persons under 18;
- Do not view or possess child pornography or child erotica, and submit to

    compliance searches;

- Do not possess any internet-enabled devices; and
- No contact, directly or indirectly (including by electronic means), with M.D. and J.D.[1]

~

Turning first to community safety, the defense acknowledges that Mr. Drechsler has been charged with three counts of distributing child pornography. But he is presumed innocent of those charges, *see* 18 U.S.C. § 3142(j), and the BRA "neither requires nor permits a pretrial determination that the person is guilty," *Motamedi*, 767 F.2d at 1408. "No one may be confined on the ground that he has committed an offense when the determination is void of the protections that are the essentials of Anglo-American jurisprudence." *United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969). Accordingly, the evidence against Mr. Drechsler is "the least important of the various factors" relevant to the bail determination. *Motamedi*, 767 F.2d at 1408; *see also United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972) (holding that, notwithstanding the government's assurances that there was "substantial" evidence against the defendant, "the least weight should be given to the weight of the evidence against the accused").

Mr. Drechsler is a 61-year-old man with no criminal history. The offense he is accused of committing took place online, and if released, he would be prohibited from possessing any internet-enabled devices and subject to compliance searches. This prohibition makes it implausible that he would engage in online misconduct. Moreover, the stakes are extremely high for Mr. Drechsler at this crucial pretrial stage, and he is well aware that any such misconduct would be highly damaging to his defense. Of course, it would also trigger immediate revocation of bond, which would include remanding him back into custody and forfeiting both his $20,000 cash deposit

---

[1] M.D. and J.D. are family members of Mr. Drechsler and their names are known to the parties.

4

and his cousin's $15,000 bond. In short, he has never had so much to lose, and it is not plausible that he would hamstring his defense, trigger his return to custody, and forfeit those considerable sums by violating bond.

As to flight risk, Mr. Drechsler is a United States citizen who has lived in this District for approximately a decade. Although he is not able to return to his family home if released, he has the funds to rent a room at an apartment hotel, where he would be on home incarceration with a GPS ankle bracelet. Home incarceration is the strictest form of house arrest, requiring the defendant to be at home 24 hours a day except for medical needs or treatment, attorney visits, and court appearances or obligations, all of which must be preapproved by Pretrial Services. Given the GPS ankle bracelet, Pretrial Services would be aware of his location at all times. His passport has already been surrendered to Pretrial Services, so he is not in possession of any travel documents. Finally, when he was arrested in Ohio in April 2023 -- where he had traveled to visit his disabled adult daughter S.D., who lives in a care facility there -- he was cooperative and voluntarily surrendered to law enforcement. In light of these facts, the defense has rebutted the presumption as to flight risk.

Finally, in bond proceedings before the Magistrate Judge, the government argued that Mr. Drechsler is a risk of harming himself if released on bond. This argument was based on statements he reportedly made in April 2023, almost a year ago. But in September 2023, Mr. Drechsler had a Court-ordered mental health evaluation by Dr. Shelton, the Chief Psychologist at the Metropolitan Detention Center, who concluded that he was "mentally stable and does not present as an imminent risk of harm to himself or others." Dr. Shelton also observed that Mr. Drechsler "evinced normal speech and thought content," showed "[n]o evidence of psychomotor agitation," and "did not endorse current suicidal ideation, intent, or plan." Dr. Shelton noted that "there were no new and/or emerging mental health concerns noted by SHU staff." More fundamentally, the defense is proposing mental health treatment as a bond condition. If the concern is for Mr. Drechsler's health and wellbeing, he would

5

1 unquestionably be safer, healthier, and receive better treatment in the community than
2 in jail.

### IV. CONCLUSION

In light of the foregoing, this Court should vacate the detention order and issue an order releasing Mr. Drechsler on the conditions proposed by the defense.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 2, 2024      By  /s/ Kate L. Morris
                              KATE L. MORRIS
                              Deputy Federal Public Defender
                              Attorneys for PHILIP DRECHSLER