E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BRUCE K. RIORDAN (Cal. Bar No. 127230)
KELLYE NG (Cal. Bar No. 313051)
Assistant United States Attorneys
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0480/8408
    Facsimile: (213) 894-3713
    E-mail:  Bruce.Riordan@usdoj.gov
           Kellye.Ng@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-216-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT PHILIP ALAN DRECHSLER'S APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE/DETENTION (18 U.S.C. § 3142) |
| v. | |
| PHILIP ALAN DRECHSLER, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Bruce Riordan and Kellye Ng, hereby files the Government's Opposition to Defendant PHILIP ALAN DRECHSLER's Application for Review/Reconsideration of an Order Setting Conditions of Detention.

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 13, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


          /s/ *Bruce K. Riordan*
BRUCE K. RIORDAN
KELLYE NG
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On June 6, 2023, United States Magistrate Judge Alka Sagar found that no conditions or combination of conditions would reasonably assure defendant PHILIP ALAN DRECHSLER's ("defendant") appearance in this case, as required, or the safety of any person or the community at large.  (Dkt. 22 at 2.)  Despite repeated requests for reconsideration, as detailed below, Judge Sagar has ordered that defendant remained detained.[1]

Now, defendant seeks this Court's review of the prior detention orders.  As described herein, there is nothing in defendant's current Application for Reconsideration of the Order Setting Detention, (Dkt Nos. 61, 64), that disturbs the wisdom and the propriety of the original detention ruling.[2]

Defendant, a 61-year-old former journalist, is charged with distributing child pornography in a private Telegram chatroom called "The Playground Lives."  On April 6, 2023, the FBI executed a search at defendant's home seeking evidence related to child pornography violation, seized numerous digital devices pursuant to the warrant and interviewed defendant, who was present during the search.  (Dkt. 1 ¶ 22.)  Less than two weeks after his encounter with the FBI -- knowing that he was under investigation for child exploitation charges--defendant secured his firearms in his car, drove from Los Angeles County to Ohio, and expressed suicidal ideations.  (Id.

---

[1] With the exception, as described below, of a one-day temporary release on December 14, 2023 authorized by Judge Sagar under strict supervision by law enforcement and Pre-Trial Services.

[2] In addition to this proffer, the government also proffers the prior Pre-Trial Services Reports in this matter wherein the Pre-Trial Services Officers assigned to this matter recommended detention.

¶ 25.)  Indeed, defendant's subsequently obtained journal entries reveal how close he was to committing suicide.  (See Declaration of Kellye Ng, ¶ 2, Ex. A, at USAO_000272-73, 275-77; located at Dkt. No. 36.)

Because of the defendant's danger to himself and to the community, the government filed an after-hours complaint on April 18, 2023.  (Dkt. 1.)  After a tense but brief standoff during which defendant was armed with a loaded gun, defendant ultimately surrendered to law enforcement at his Ohio hotel.  (Ng Decl. ¶ 3, Ex. B at 1.; Dkt. No. 35.)  Defendant conveyed to the arresting officers that he had contemplated three options: commit suicide, run, or surrender.  (Id.)  Subsequently, defendant was indicted in this District.

This Court should deny defendant's current application because he fails to rebut the presumption of detention under 18 U.S.C. § 3142(e)(3), especially where defendant is presently charged under 18 U.S.C. § 2252A(a)(2)(A).  Moreover, there are no conditions or combination of conditions that will reasonably assure either defendant's appearance or the community's safety.  No new information refutes these findings, particularly considering: (1) the nature of the charges; and (2) the prospect that defendant will serve a substantial term of imprisonment upon conviction -- specifically, a five-year mandatory minimum sentence for his distribution of child pornography charges.  See 18 U.S.C. § 2252A(a)(2)(A), (b)(1).

**II.  PROCEDURAL HISTORY**

On April 19, 2023, defendant made his initial appearance on the complaint in the Southern District of Ohio and the Court ordered him detained.  On May 30, 2023, defendant made his initial appearance in

2

the Central District of California. (Dkt. 13.) At the continued detention hearing on June 6, 2023, Judge Sagar ordered that defendant be detained pending trial. (Dkt. 22.)

In its Order, the court found no conditions or combination of conditions that would reasonably assure the safety of the community and the appearance of the defendant as required. (Id. at 2.) Specifically, the court found that detention was warranted by: (1) the lack of suitable residence and oversight (suitable staffing); (2) mental health concerns; (3) defendant's possession of a loaded firearm at the time of his arrest; (4) defendant's statements regarding his suicidal ideations, access to firearms, and mental health concerns; and (5) the allegations in the present charging document. (See generally Dkt. 22.)

On September 1, 2023, defendant filed his first application for reconsideration of Magistrate Judge Sagar's order of detention (the "First Application"). (Dkt. 27.). This Court referred the First Application to Magistrate Judge Sagar for consideration. The government opposed defendant's First Application. (See Dkt. Nos. 31 through 36.). In support of its opposition to the First Application, the government filed a memorandum of points and authorities (Dkt. No 31), as well as a declaration of government counsel and exhibits. (Dkt. Nos. 35, 36). Due to the confidential and sensitive nature of the matters discussed in the opposition, the unredacted memorandum, unredacted declaration and unredacted exhibits were filed under seal.[3]

---

[3] The government incorporates herein by reference its opposition to the First Application, as well as the Declaration of Kellye Ng and its exhibits. (Dkt. Nos 31, 35 and 36.).

3

Magistrate Judge Sagar held an initial hearing on the First Application on September 6, 2023, took the matter under submission, and set a further status conference for September 15, 2023. (Dkt. 37.) Pursuant to her prior orders, defendant remained in custody. On September 14, 2023, defendant filed a renewed *ex parte* application for an order for "temporary release" to allow defendant to conduct certain personal and legal affairs (the "Second Application"). Judge Sagar held a hearing on September 15, 2023 and a subsequent hearing on October 13, 2023, where she denied the Second Application, rejecting defendant's application for temporary release. However, in order to accommodate defendant's request to address certain legal and financial affairs, Judge Sagar instructed the parties to meet and confer in good faith with respect to proposing strict terms and conditions of a one-day temporary release to meet with his counsel under the supervision of both law enforcement and Pre-Trial Services.

The one-day temporary release was successfully completed on December 14, 2023 at the Santa Ana Federal Courthouse. On the morning, of December 14, 2023, pursuant to Magistrate Judge Sagar's order, FBI agents transported defendant from the custody of the Santa Ana Jail to a meeting room in the Federal Courthouse where defendant could confer with his counsel and make personal financial arrangement under supervision. In the afternoon of December 14, the FBI agents transported defendant back to the custody of the Santa Ana Jail.

Defendant is currently in custody at the Santa Ana Jail pursuant to Judge Sagar's order.

### III. DEFENDANT SHOULD REMAIN DETAINED PENDING TRIAL

Defendant's current application for reconsideration of pretrial detention should be denied because, as in the prior applications, he

4

fails to overcome the presumption of detention applicable to his distribution of child pornography charges; he remains a danger to the community; he remains a risk of nonappearance; and -- against this record -- his proposed terms and conditions fail to warrant reconsideration of Magistrate Judge Sagar's well-considered detention orders.

**A. Legal Standards for Pretrial Detention, Including the Statutory Presumption in Favor of Detention**

A defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is thus appropriate where a defendant is either a danger to the community or a flight risk. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). In the typical case, "the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing Motamedi, 767 F.2d at 1406-07). But where, as here, there is probable cause to believe that defendant committed an offense under 18 U.S.C. § 2252(A)(a)(2)(A), it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E).

Categorical grants or denials of bail, untethered from an individualized determination, are impermissible. United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019). That is because "the Bail Reform Act mandates an individualized evaluation guided by

the factors articulated in § 3142(g)." Id. Those factors are:

    (1)  the nature and circumstances of the offense charged;

    (2)  the weight of the evidence against the defendant;

    (3)  the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history; and

    (4)  the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam) (citation omitted).  Consideration of non-statutory factors is disfavored.  Diaz-Hernandez, 943 F.3d at 1199.

Under 18 U.S.C. § 3142(f)(2), a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

    1.  **Defendant Is Charged with Serious Crimes, Including Distribution of Child Pornography**

Defendant distributed child pornography in a private Telegram chatroom called, "The Playground Lives."  The seriousness of defendant's offenses is underscored by the penalties Congress has imposed for these crimes: a mandatory minimum of five years' incarceration for distribution of child pornography and potentially higher given the recently uncovered conduct regarding an actual minor victim described in Section 3 below.  The penalties reflect the seriousness of the crimes and the danger defendant poses to the community, as well as provide an incentive for defendant to flee if released pending trial.

### 2. The Weight of the Evidence is Overwhelming

Defendant distributed the child sex abuse material ("CSAM") as described in detail in the complaint and indictment. (Dkt. 1 ¶ 19; Dkt. 7.) Indeed, defendant wrote about his conduct in his own journal entries. (Id. ¶ 2, Ex. A at USAO_000274 ("Why are companies like TikTok/Meta/Instagram allowed to store and distribute tons of images and videos to millions of people with sophisticated algorithms that feed addiction . . . without consequence?? It's classic . . . punish the addict, but the dealer is untouchable."); id. at 271 ("My sins were in my mind and on the Internet . . . .").) A preliminary review of defendant's digital device during the search showed apparent CSAM in his "recently deleted" photo album. (Dkt. 1 ¶ 22.)

Moreover, subpoena records show that defendant's Telegram account listed a Google Voice number that traced back to defendant. (Id. ¶ 14.)

### 3. Defendant's Personal Characteristics and Conduct Indicate that He is a Danger to the Community

While the defendant has no prior convictions, his personal characteristics and conduct indicate that he is a danger to the Community. First, as established with Magistrate Judge Sagar, defendant's own journal entries show how close he was to committing harm to himself. Defendant's agreement to give up his firearms and ammunition does not resolve the issue of the danger he poses to himself or to the community. Despite the best drafted terms and conditions of release, defendant could not be trusted to not seek to access weapons or other items that may be used to commit harm to himself or others. (See generally Dkt. 27.) Defendant's ability to

lead a double life over a long period of his adult life, makes him unconducive to effective supervision, if released. The person who may know him best, M.D., has represented that she is terrified that defendant will show up at her door if released. (See Ng Decl. ¶ 4, Ex. C at 1.; Dkt. 35.)

The government understands that defendant has received a mental-health evaluation while in custody, (Dkt. 64 at p. 5), and is cognizant of efforts to maintain his "health and well-being" in custody. To this point, government counsel has assisted defendant and his counsel in obtaining a court order to move defendant from MDC-LA to the Santa Ana jail and in coordinating the transfer with the United States Marshal's Service and the Santa Ana Jail where his health and well-being have been considerably improved. There is no evidence that any aspect of his current confinement supports reconsideration of the Magistrate Court's prior rulings.

Indeed, there is nothing unusual about Magistrate Judge Sagar's decision, made after substantial fact-finding on her part, to detain defendant. Courts frequently are compelled to detain defendants accused of child exploitation crimes, even when the defendant has little or no criminal history. See United States v. Abad, 350 F.3d 793, 798-99 (8th Cir. 2003) (noting even though the defendant had no prior criminal history, "the nature of the crime charged – sexual activity with a minor" – weighs heavily against release); United States v. Mercedes, 254 F.3d 433, 438 (2d Cir. 2001) (reversing the decision of the district court to release the defendant even without a prior criminal record where crime victim was a minor); United States v. Gaw, 2013 WL 5979625, *3 (N.D. Cal. Nov. 8, 2013)

8

(detaining employed defendant with no criminal history because the evidence showed that he received child pornography and used social media site to induce minor to create child pornography).

Moreover, since the time the detention orders were made in this case, the government's investigation continued with the painstaking review of the digital devices and digital data seized pursuant to the federal warrants obtained in this matter. This review, conducted by the case agent, FBI Agent Chelsea Malone, has uncovered at least one actual minor victim with whom defendant made contact through Snapchat videos on the Snapchat application. During those Snapchat video chats, defendant engaged in sexually explicit conduct with H.R. that may give rise to additional charges.[4] This conduct occurred in and around sometime between 2021 and 2022 while the minor victim, a 12 year old identified by FBI as H.R., was residing in Idaho and defendant was residing in Los Angeles County. Recently, Agent Malone conducted a Child Adolescent Forensic Interview, also known as CAFI interview, with H.R. in Idaho and H.R. identified a driver's license photo of defendant as the man who H.R. knew as "Phil."[5]

For all of these reasons, there are no conditions of release that would adequately protect the safety of the community here.

---

[4] Defendant's proficiency with online platforms such as the Telegram App and Snapchat serves to underline the concern that no conditions or terms will successfully mitigate his ability to present a danger to the community.

[5] This discovery has been made available to defendant and his counsel and can be shared with the Court if requested.

        4. <u>Defendant's Proposed Bond Does Not Mitigate the Risk of Danger</u>

In his application, defendant proposes a $15,000 appearance bond signed by his cousin, Jon Werner; a $20,000 cash deposit[6]; home incarceration; no Internet-enabled devices; no firearms; among other conditions.[7]  (Dkt. 64.)

But even significant bond resources do nothing to eliminate the risk of danger to the community.  <u>See</u> Rep. No. 225, 98th Congress, 1st Sess. 1983, 1984 U.S.C.A.N. 3182, 3198-99 (n.60) (Congress finding that "a defendant who is a danger to the community remains dangerous even if he has posted a substantial money bond").

Similarly, defendant's proposed monitoring conditions could not reliably prevent him from accessing other means to harm himself or others, or accessing the Internet via devices belonging to other persons.  In light of the "myriad Internet-capable devices available, including those that work with data plans rather than WiFi access, render[] policing [defendant's] Internet use almost impossible." <u>Cornish</u>, 449 F. Supp. 3d at 686-87 (finding that bond conditions could not sufficiently mitigate the danger defendant posed to the community, and children in particular, if he was released); <u>see also</u> <u>United States v. Ritterhoff</u>, 11-CR-1955-WJ, 2011 WL 13289664, *3-4 (D. N.M. Aug. 8, 2011) (reversing the magistrate court's order setting conditions of release and remanding defendant to custody,

---

[6] M.D., defendant's estranged spouse, has indicated that defendant has no liquid cash and that he should not be moving assets from their savings account while their divorce proceedings are pending.  (Ng Decl. ¶ 4, Ex. C at 1.)  She also noted that if defendant were to access his retirement, he would be required to use the Internet.  (<u>See id.</u>)

[7] The proposed terms, in large measure, track the terms and conditions defendant proposed in his First Application.  (Dkt 27.)

10

reasoning that no conditions could reasonably assure defendant's appearance and safety of the community where defendant attempted to entice minors on the Internet because the ubiquity of Internet access made it virtually impossible to prevent defendant from using it); United States v. Reiner, 468 F. Supp. 2d 393, 398-99 (E.D.N.Y. 2006) ("In this day and age, with devices such as cellphones, Blackberries, and laptops, there are no conditions which can reasonably assure the safety of the community under the particular circumstances of this case if the defendant is released on bail."). Punitive felony criminal statutes were not enough to deter defendant from participating in distribution of child pornography in private chatrooms and from counseling other chatroom members to evade law enforcement detection; there is little reason to think that a (largely unenforceable) bond condition will be more effective.

    In sum, as to danger to the community, defendant has not identified the type of change in circumstances that would warrant a change in the Court's previous ruling.

        5.   <u>Defendant Poses a Risk of Nonappearance</u>

    The Pretrial Services Reports prepared for defendant also support the Magistrate Judge's finding that defendant he poses a risk of nonappearance. After law enforcement conducted a search at his home and seized his digital devices,[8] defendant expressed suicidal ideations and instructed his spouse to donate his belongings. (Dkt. 1 ¶ 25.) Therefore, days after the search—-when defendant knew that he was under investigation for distributing child pornography—-he

---

[8] As noted in the complaint, a preliminary review of defendant's device showed what appeared to be CSAM in the "recently deleted" photo album folder.

11

grabbed his firearms and ammunition, and drove from Los Angeles County to Ohio to visit his parents' gravesite one last time. (Id. ¶ 25.) Defendant's journal entries speak for themselves. (See Ng Decl. ¶ 2, Ex. A, at USAO_000272-73, 275 ("my gun is 2 feet from my hand and it is taking all my strength not to use it"); "I hope my high blood pressure kills me before I do."); ("so if an arrest is imminent what do I do? Die or not die?" and listing pros and cons of death). Defendant poses a continued risk of nonappearance if released into the community.

Additionally, in defendant's own Telegram communications, defendant instructed other chatroom members how to evade law enforcement detection (Dkt. 1 ¶ 19) and wrote in his journal about needing to delete his Snap, Instagram, and Twitter accounts (Ng Decl. ¶ 2, Ex. A, at USAO_000279). Defendant cannot now be entrusted to comply with the Court's and Pretrial Service's orders.

Defendant also faces a statutorily required, mandatory minimum sentence of five years' imprisonment and a maximum penalty of twenty years' imprisonment. The possibility of a lengthy prison sentence may motivate defendant to flee. See United States v. Townsend, 897 F.2d 989, 994-95 (9th Cir. 1990) (holding that the district court properly considered "penalties possible under the present indictment" as providing an "incentive to consider flight," and noting that electronic monitoring cannot assure prevention of flight).

Because of defendant's potential for violent self-harm, his instructions to other Telegram chat users on how to evade law enforcement detection, the risk that he will access the internet to engage in behavior similar to the charged offenses and the

12

significant prison length he faces, defendant's risk of nonappearance cannot be mitigated.

**IV. CONCLUSION**

Nothing in defendant's application overcomes the statutory presumption in favor of detention, and nothing justifies reconsideration of the Magistrate Judge's prior, well-reasoned findings and decision.  For these reasons, the government respectfully requests that this Court deny defendant's current application for reconsideration of the prior detention orders.